```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND


AUDREY ASKEW                     :
                                 :
v.                               :   Civil No. WMN-06-666
                                 :
BON SECOURS MEDICAL              :
SYSTEM INC., et al.              :
```

**MEMORANDUM**

Before the Court is Defendants' motion to dismiss and/or strike, in part, the Complaint. Paper No. 7. Plaintiff has not opposed the motion and the time for doing so has expired. Upon a review of the motion and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Audrey Askew, an African-American female, filed suit in the Circuit Court for Baltimore City against her former employer, Bon Secours Medical System, Inc. (Bon Secours), and four Bon Secours' employees: Jeannette Burnside, David McCombs, Seth Lee, and Kathy Warner.  In the Complaint, Plaintiff alleges eleven different counts: race discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 et seq. (Counts 1-3); violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 621 et seq. (Count 4); violation of the Health Insurance Portability and Availability Act of 1996 (HIPAA), 42 U.S.C. § 1320d-5 (Count 5); violations of Article 24 and Article 26 of the Maryland

Declaration of Rights (Count 8); and additional violations of state law in the form of invasion of privacy (Count 6), wrongful discharge (Count 7), intentional infliction of emotional distress (Count 9), negligence (Count 10), and breach of contract (Count 11).  On March 13, 2006, Defendants removed the suit to this Court and now seek to dismiss seven of Plaintiff's claims in their entirety and to dismiss or strike portions of the other four claims.

**II.  LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  "To survive a motion to dismiss, Plaintiff[s] must have alleged facts that show that they are entitled to relief on their substantive causes of action."  In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).

**III.  DISCUSSION**

A.  HIPAA Claim (Count 5)

Plaintiff's Complaint alleges that during an August 24, 2004, meeting with Warner and Burnside she was coerced to disclose details of her medical conditions.  Compl. ¶ 33.  Under HIPAA, the Secretary of Health and Human Services shall pursue the action against an alleged offender, not a private individual. See Logan v. Dep't of Veterans Affairs, 357 F. Supp. 2d 149, 155 (D.D.C. 2004).  Because HIPAA creates no private right of action concerning disclosure of individually identifiable health information this Court has no subject matter jurisdiction over Plaintiff's HIPAA claim.  See id.

B.  Invasion of Privacy (Count 6)

Under Maryland law, invasion of privacy is not one tort, but is comprised of four invasion types: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.  Bailer v. Erie Insurance Exchange, 344 Md. 515, 525-26 (1997).  Plaintiff does not specify which of the four invasion types she is asserting.

The only allegations Plaintiff asserts in reference to her invasion of privacy claim is that, "Defendants disclosed, or caused to be disclosed, Plaintiff's confidential health information to Defendant Burnside, on August 24, 2004, at Bon

Secours place of business, when they coerced Plaintiff to disclose details of her surgery, which was covered by HIPAA (sic) and FMLA." Compl. ¶ 38. Plaintiff's general allegations would not support a claim brought under any of the four invasion types. First, because Plaintiff has not alleged any violation of her physical space, an intrusion of seclusion claim would fail. See Morash v. Anne Arundal County, 2004 U.S. Dist. LEXIS 21688, *12-13 (D. Md. Oct. 28, 2004) (dismissing a claim for intrusion upon seclusion based on the plaintiff's failure to allege any violation of her physical space). Second, none of Plaintiff's allegations suggest that Defendants appropriated Plaintiff's name or likeness. Third, Plaintiff does not allege that Defendants communicated a fact concerning Plaintiff's private life to the public. See Pemberton v. Bethlehem Steel Corp., 66 Md. App. 133, 166 (1986) (stating that to succeed on the tort of publicity given to private life the matter disclosed must be a private fact and must be made public). "It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Id. Finally, Plaintiff does not allege that Defendants placed her in a false light, nor does she allege that such a disclosure was made public. See Southern Volkswagen, Inc. v. Centrix Financial, LLC, 357 F. Supp. 2d 837 (D. Md. 2005) (noting that a valid false light claim requires a public, and not

4

a private, disclosure of private facts).

C.  Wrongful Discharge (Count 7)

Plaintiff bases her wrongful discharge claim on the public policies embodied in her rights to due process and equal protection guaranteed under Articles 24 and 26 of the Maryland Declaration of Rights and FMLA.  Compl. ¶ 42.  Under Maryland law the tort of wrongful discharge is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy."  Makovi v. Sherwyn-Williams Co., 316 Md. 603, 605 (1989).  Because remedies are available under both of Plaintiff's alleged policy sources, her claim must fail.  First, "[a] common law tort action for damages exists to remedy violations of Article 24 and Article 26 of the Maryland Declaration of Rights." Clea v. Baltimore, 312 Md. 662, 679 (Md. 1988).  Second, "FMLA provides a civil remedy for any violations."  See 29 U.S.C. § 2617.  "As a matter of law, the FMLA cannot be a source of public policy on which to base a wrongful discharge claim under Maryland law."  Cooper v. Harbour Inns of Balt., Inc., 2000 U.S. Dist. LEXIS 4284, *27 (D. Md. March 20, 2000).

D.  Maryland Declaration of Rights (Count 8)

Plaintiff's claims alleging violations of her rights secured under Articles 24 and 26 of the Maryland Declaration of Rights fail because Plaintiff fails to allege that any of the Defendants

are state actors or in some manner acted under color of state law.  See Okwa v. Harper, 360 Md. 161, 201-02 (2000) (noting that Articles 24 and 26 are "specifically designed to protect citizens against certain types of unlawful acts by government officials").

E.  Intentional Infliction of Emotional Distress (Count 9)

The Court of Appeals of Maryland has stated that the tort of Intentional Infliction of Emotional Distress (IIED) "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct. . . . The general rule that emerges from case law is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.  The requirements of the rule are rigorous, and difficult to satisfy." Kentucky Fried Chicken Nat'l Management Co. v. Weathersby, 326 Md. 663, 670 (1992).

Plaintiff supports her IIED claim with the following allegations: (1) Defendant removed Plaintiff from her assigned office, reassigned her to a cubicle, and circulated a flier on "cubicle etiquette;" (2) Defendant failed to take action when an employee allegedly referred to Plaintiff as a "nigger" and when, on a separate occasion, another employee allegedly pulled down his pants in front of Plaintiff and showed her his underwear; and (3) Plaintiff was terminated a few minutes after returning to

6

work from FMLA leave.  Compl. ¶ 48.  Plaintiff's allegations fail to rise to the requisite level of extreme and outrageous conduct and this claim must fail.[1]

F.  Negligence (Count 10)

In support of her negligence claim, Plaintiff alleges that Bon Secours breached a duty owed to her to "properly investigate the facts" surrounding Plaintiff's alleged harassment.  Compl. ¶¶ 51-52.  Plaintiff also alleges that Bon Secours breached a duty by "negligently recruiting, training, supervising, and retaining Defendants Burnside, McCombs, Warner, and Lee."  Id. ¶ 52.  Plaintiff's negligence claim is preempted by the Maryland Worker's Compensation Act, Md. Code Ann., Labor & Employ. Art., §§ 9-501 et seq.  See Demby v. Preston Trucking Co., 961 F. Supp. 873, 882 (D. Md. 1997).  As such, this claim must fail.

G.  Breach of Contract (Count 11)

Plaintiff asserts that she "entered into a valid contract of employment with [Bon Secours]" and "[Bon Secours] promised to

---

[1] In Collier v. Ram Partners, Inc., this Court found that an employer's failure to act when an employee used the "n-word" two to three times a week and often used other racial slurs in the plaintiff's presence did not rise to the high level of outrageousness required for a cause of action based on IIED.  159 F. Supp. 2d 889, 902 (D. Md. 2001) (noting that although racial epithets are no doubt harmful, an IIED claim could not be based on the employer's alleged unresponsiveness to such conduct, because an IIED claim is "reserved for those wounds that are truly severe and incapable of healing themselves").

7

follow specified fair procedures to terminate Plaintiff from her job and abide by all laws applicable to FMLA." Compl. ¶ 55. Plaintiff further alleges that, "[Bon Secours] breached [its] promise to Plaintiff when [it] terminated Plaintiff, without following the procedures and while Plaintiff was receiving treatment under FMLA." Id. ¶ 56.

In asserting a breach of contract claim, Maryland case law requires more than "skeletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of contractual duty." Continental Masonry Co., Inc. v. Verdel Construction Co., Inc., 279 Md. 476, 481 (1977). Plaintiff has failed to adequately allege what Bon Secour's contractual obligations were and how they were breached.

### H.  "Pattern or Practice" Claim of Count I

In support of Plaintiff's racial discrimination claim, she asserts that "Bon Secours maintains a custom, policy and pattern of race-based discrimination." Compl. ¶ 13. Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claim of a "pattern or practice" of racial discrimination. Defendants reason that Plaintiff failed to exhaust her administrative remedies as to this claim, because she failed to raise it in either of her Equal Employment Opportunity Commission (EEOC) charges. See Laber v. Harvey, 438 F.3d 404, 416 (4th Cir. 2006) (stating that all employees alleging

discrimination under Title VII must exhaust their administrative remedies before exercising this right). One of the cases upon which Defendants rely in support of this argument is an unpublished Ninth Circuit decision, Johnson v. Rubin, 1997 U.S. App. LEXIS 764, *5-7 (9th Cir. Jan. 13, 1997). While the Johnson court did affirm the district court's dismissal of a pattern or practice claim for failure to exhaust administrative remedies, the court noted that "incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." Johnson, 1997 U.S. App. LEXIS at *4-5 (quoting Green v. Los Angeles County Superintendent of Sch., 883 F.2d 1472, 1475-76 (9th Cir. 1989)).

Assuming the Court has subject matter jurisdiction, to the extent Plaintiff makes a separate claim of "pattern or practice" discrimination, that claim should be dismissed. The Fourth Circuit has declined to give individual plaintiffs a pattern or practice cause of action. Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999). The Court notes that, "evidence of a pattern or practice of discrimination may very well be useful and relevant to prove the fourth element of a prima facie case, that the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful

9

discrimination, or that the employer's articulated reasons for the adverse action was merely pretext, or to establish the plaintiff's ultimate burden." Id. (internal citations omitted).

## I.  Damages

In Counts 1, 2, and 3, Plaintiff seeks $6 million in punitive and compensatory damages for Defendants alleged Title VII violations.  42 U.S.C. § 1981(a)(b)(3)(D) caps the compensatory and punitive damage amounts of Plaintiff's Title VII claims at $300,000.  See Boenig v. Potter, 2005 U.S. Dist. LEXIS 5086, *18-19 (D. Conn. Mar. 28, 2005) (applying the $300,000 statutory cap of 42 U.S.C. § 1981a to a Title VII claim).  The Court will strike Plaintiff's request for $6 million in damages under each of her three Title VII claims and cap her damages claims at $300,000 in accordance with the statutory limits.

Under Plaintiff's FMLA claim, set forth in Count 4, Plaintiff seeks compensatory and punitive damages in the amount of $6 million for alleged injuries that include harm to her reputation, emotional distress, and anguish.  Compl. ¶ 30. Prevailing FMLA Plaintiffs are entitled to "damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" plus interest.  29 U.S.C. § 2617(a)(1)(A)(i)(I), (ii). "[A]n additional amount as liquidated damages equal to the sum" of the above damages may also be awarded."  Id. §

2617(a)(1)(A)(iii).

In an unpublished decision, the Fourth Circuit has recognized that "damages under the FMLA are limited to lost or denied wages, salary, benefits, or other compensation" and damages for emotional distress are not recoverable. Montgomery v. Maryland, 72 Fed. Appx. 17, 19 (4th Cir. 2003). Defendants request to strike Plaintiff's demand for FMLA damages based on harm to her reputation, emotional distress, and anguish will be granted. What remains of ¶ 30 of the Complaint should state, "As a result of defendants' acts, Plaintiff suffered damages, including loss of benefits and loss of income." In addition, the Court will strike her request for punitive damages.

## IV.  CONCLUSION

For these reasons, Defendants' motion to dismiss Counts 5-11 and the "pattern or practice" claim of Count 1 will be granted. Plaintiff's Title VII claims for racial discrimination, retaliation, and hostile work environment (Counts 1-3) remain, but the Court will strike Plaintiff's request for $6 million in compensatory and punitive damages under each of these claims and will limit her demand for damages to $300,000 per claim in accordance with the statutory cap. Plaintiff's FMLA claim (Count 4) also remains, but the Court will strike her demand for punitive damages and her damages may only be based upon a loss of benefits and a loss of income. A separate order consistent with

this Memorandum will follow.

                                                            /s/
                                 _____
                                 William M. Nickerson
                                 Senior United States District Judge

Dated: April 27, 2006